UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY CORREA,

        Plaintiff,

-against-

SGT. LYNCH, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

20-CV-02875 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Anthony Correa ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Captain James Ginty ("Ginty"), Sergeant Lynch ("Lynch"), Corporal Matis ("Matis"), Deputy CO Anthony Gurrieri ("Gurrieri"), Deputy Torres ("Torres"), and Nurse Wendy ("Wendy," and collectively, "Defendants") for violating his constitutional rights while he was incarcerated at the Sullivan County Jail ("SCJ").[1] (Doc. 2, "Compl."). Generally, Plaintiff alleges that on January 9, 2020: (1) Ginty, Lynch, Matis, Gurrieri, and Torres either used excessive force against him or failed to intervene in the use of that force; and (2) Wendy was deliberately indifferent to his serious medical needs following the use of excessive force. (*See id.* at 5-8). Plaintiff also alleges a violation of N.Y. Corr. Law § 137(5). (*Id.* at 4).

Lynch filed a motion to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6) on September 29, 2020. (Doc. 34; Doc. 37, "Lynch Br."). The following day, September 30, 2020, Matis, Gurrieri, and Torres[2] moved to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 39; Doc. 42, "Matis Br."). Both

---

[1] The Court *sua sponte* dismissed Ginty from this action in its April 20, 2020 Order of Service because Plaintiff failed to "allege any facts showing how . . . Ginty was personally involved" in the underlying events. (Doc. 6 at 3). Wendy filed an Answer on July 31, 2020. (Doc. 20).

[2] For ease of reference, Matis, Gurrieri, and Torres are referred to collectively as the "Matis Defendants."

motions, and their supporting papers, were served on Plaintiff. (*See* Doc. 38; Doc. 44). Although papers opposing the pending motions were scheduled to be filed and served on or before November 2, 2020, the Court has received no correspondence from Plaintiff since September 17, 2020, when he notified the Court that his address had changed. (*See* Doc. 29; Doc. 32). The Court will consider, however, Plaintiff's opposition to Lynch's and the Matis Defendants' pre-motion conference letters. (Doc. 28, "Pl. Ltr.").

For the reasons below, the motions to dismiss are DENIED except as indicated herein.

## BACKGROUND

On January 9, 2020, Plaintiff was incarcerated at SCJ as a pretrial detainee. (Compl. at 5, 10).[3] At approximately 9:45 p.m. that evening, Plaintiff kicked his cell gate "with the bottom of [his] foot" because he had been denied access to the law library "several times prior [that] date." (*Id*. at 5). As Plaintiff kicked, Lynch, Matis, Gurrieri, and Torres responded to Plaintiff's cell; Plaintiff claims that those individuals opened his cell, "rushed" toward him with their "fist[s] up," and "punch[ed] at [him]." (*Id*.). Plaintiff says that he shielded his face with his hands "to protect [his] face from getting hit . . . and getting hurt." (*Id*.). As Plaintiff hid his face, Lynch and Matis "picked [him] up into the air and slammed [his] body to the floor," causing his head to "bounce[] off of the ground." (*Id*.). After being slammed into the ground, unspecified individuals bound Plaintiff's hands. (*Id*.). At this juncture, Lynch "place[d] his right knee onto [Plaintiff's] neck," applying pressure and making it difficult for Plaintiff to breathe. (*Id*. at 5-6). Although Plaintiff pled with Lynch to stop, the latter applied more pressure and left Plaintiff "gasping for air." (*Id*. at 6). As Plaintiff struggled to breathe, Lynch, Matis, and Torres punched Plaintiff; they taunted him, asking him, "Stop what[?] Stop what[?]" (*Id*.). The trio beat Plaintiff to tears. (*Id*.).

---

[3] Citations to the Complaint correspond to the pagination generated by ECF.

As Plaintiff wept, Matis and Torres lifted him by his restraints and escorted him to the infirmary. (*Id*.). Upon arrival at the infirmary, Wendy questioned Plaintiff about what transpired and, thereafter, spoke with Matis and Torres. (*Id*.). After speaking with the officers, Wendy "checked [Plaintiff] real quick," and ignored Plaintiff's injuries, commenting, "Oh, you'll be fine." (*Id*. at 6-7). Plaintiff told Wendy about pain in his head, his blurred vision, and that he spat up blood; he also had open wounds on his legs, hip, neck, and left shoulder, in addition to "numerous scrapes and bruises all over [his] body." (*Id*. at 7). Plaintiff was neither evaluated nor treated. (*Id*.). Although Plaintiff requested to be taken to the hospital, he was escorted back to his cell without care of any kind. (*Id*. at 6-7). This suit followed.

**STANDARD OF REVIEW**

I. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intel. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot

invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. Yet, the Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an essentially unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-5286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). Therefore, it is appropriate for the Court to test the legal sufficiency of the Complaint even without the benefit of formal opposition to the motions.

II. Documents Considered

On a Rule 12(b)(6)[4] motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41,

---

[4] The Matis Defendants argued that the failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), addressed *infra*, is a jurisdictional defect requiring dismissal under Federal Rule of Civil Procedure 12(b)(1). (Matis Br. at 9 ("Plaintiff did not comply with the PLRA . . . and therefore . . . this Court lacks subject matter jurisdiction.")). However, the Second Circuit has explained that "exhaustion is not jurisdictional." *Richardson v. Goord*, 347 F.3d 431, 433 (2d Cir. 2003); *see also Arnold v. Goetz*, 245 F. Supp. 2d 527, 531 (S.D.N.Y. 2003) ("Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint when the court lacks jurisdiction over the subject matter. However, the PLRA's exhaustion requirement is not jurisdictional in nature." (internal citations and quotation marks omitted)). As such, the Matis Defendants' motion to dismiss under Rule 12(b)(1) is denied because there is no basis for such a motion on the facts presented. While exhaustion may be a complete defense here, adjudication of this issue is inappropriate at this stage of the litigation.

43 (2d Cir. 2014); *see also Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, No. 20-3084-CV, 2021 WL 1621595, at *1 (2d Cir. Apr. 27, 2021) (internal quotation marks omitted).

Both motions are supported by affidavits signed by Harold L. Smith, Jr. ("Smith"), the highest-ranking officer at SCJ and the Jail Administrator at that facility since January 2005. (Doc. 36 ¶ 1; Doc. 41 ¶ 1). Annexed to the affidavits are copies of: (1) the SCJ Inmate Rule Book in its entirety (Doc. 36-1; 41-1); (2) the personal property envelope Plaintiff signed acknowledging receipt of the SCJ Inmate Rule Book (Doc. 36-2; Doc. 41-2); (3) the specific portion of the SCJ Inmate Rule Book outlining the inmate grievance procedure (Doc. 36-3; Doc. 41-3); (4) the Informal Grievance Form for Grievance No. 20-015 (Doc. 36-4); (5) documents associated with Grievance No. 20-031 and Grievance No. 20-032 (Doc. 36-5; Doc. 41-4); and (6) an April 21, 2020 letter from Plaintiff requesting copies of Grievance No. 20-031 and Grievance No. 20-032 (Doc. 41-5). Lynch argues that the Court may consider these documents now because "the Complaint itself contains an allegation regarding the PLRA's exhaustion requirement." (Lynch Br. at 5). The Matis Defendants likewise argue that the Court may consider these extraneous documents because Plaintiff referenced exhaustion. (Matis Br. at 8-9). The Court disagrees.

The Complaint's lone reference to grievances reads as follows:

> I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be

> dismissed if I have not exhausted administrative remedies as required.

(Compl. at 11). This reference to the PLRA's exhaustion requirement in the abstract does not incorporate SCJ's grievance procedure—or grievances themselves—into to the Complaint.[5] Were the Court to hold otherwise, it would contradict precedent holding squarely that incarcerated individuals need not establish compliance with the PLRA as a prerequisite to bringing suit. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints. We understand the reasons behind the decisions of some lower courts to impose a pleading requirement . . . but that effort cannot fairly be viewed as an interpretation of the PLRA."); *Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *5 (S.D.N.Y. Feb. 8, 2017) (declining to consider extraneous grievance documents where the plaintiff "ma[de] no reference" to the documents submitted and noting that "[e]xhaustion is not 'integral' to Plaintiff's claims—it is an affirmative defense that Defendants bear the burden of proving"); *cf. Gunn v. Annucci*, No. 20-CV-02004, 2021 WL 1699949, at *3 (S.D.N.Y. Apr. 29, 2021) (concluding that extraneous grievance documents could be considered because they were "integral to and referenced in" the complaint in light of the facts plaintiff pled).

As such, the Court will not consider the documents submitted by Lynch and the Matis Defendants in support of their motions to dismiss.[6]

---

[5] Plaintiff asserted in his opposition to the pre-motion conference requests that he complied with the PLRA and filed timely grievances that were "denied because they were not timely processed by the administration." (Pl. Ltr. ¶¶ 3, 7).

[6] Both Lynch and the Matis Defendants argue that, should the Court decline to consider the extraneous documents, their motions be converted into motions for summary judgment under Federal Rule of Civil Procedure 56. (Lynch Br. at 8-9; Matis Br. at 18-19). This Court has "complete discretion in determining whether to convert" motions to dismiss into motions for summary judgment, *Abbey v. 3F Therapeutics, Inc.*, No. 06-CV-409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009), and declines to do so here.

## ANALYSIS

I. <u>Failure to Exhaust Administrative Remedies</u>

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), and it is "'mandatory': [a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016) (citation omitted). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cty.*, No. 19-CV-3052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)). Compliance with the PLRA "is an affirmative defense, not a pleading requirement, and therefore a motion to dismiss for failure to exhaust may only be granted if it is clear from the face of the complaint that the plaintiff failed to exhaust" his administrative remedies. *See Gunn v. Beschler*, No. 16-CV-6206, 2020 WL 7398751, at *4 (W.D.N.Y. Dec. 17, 2020).

The Complaint makes no reference to the grievance process apart from acknowledging the fact that this "case may be dismissed" for failure to comply with the PLRA. (Compl. at 11). It is,

therefore, not clear from the face of the Complaint that Plaintiff failed to exhaust his administrative remedies. *See Woodhouse v. City of Mount Vernon*, No. 13-CV-00189, 2016 WL 354896, at *8 (S.D.N.Y. Jan. 27, 2016) ("If exhaustion is not an affirmative pleading requirement, then plaintiff[] cannot be penalized for what [he] do[es] not say in [his] pleadings about [his] efforts to exhaust." (alterations in original, internal quotation marks omitted)); (*see also* Pl. Ltr. ¶¶ 3-4, 7 (asserting that Plaintiff complied with the PLRA)). The motions to dismiss on the basis of Plaintiff's failure to exhaust his administrative remedies are, therefore, denied. Lynch and the Matis Defendants may renew this argument at summary judgment, should they be so advised.

II. <u>Failure to State an Excessive Force Claim Against Lynch</u>

Lynch argues that the excessive force claim against him should be dismissed because the *pro se* litigant identified the wrong constitutional right. Lynch's argument reads, *in toto*, as follows:

> Plaintiff's claim of cruel and unusual punishment must be dismissed because the Eighth Amendment only applies to those convicted of a crime and Plaintiff was a pre-trial detainee at the time of the alleged incident.

(Lynch Br. at 7). Lynch is correct that Plaintiff erred by invoking the Eighth Amendment because, as Plaintiff was a pretrial detainee during the events in question, the claim would be governed by the Fourteenth Amendment. *See Gerard v. City of New York*, 843 F. App'x 380, 382 (2d Cir. 2021) ("The Fourteenth Amendment's 'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015))); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). However, given the special solicitude granted to *pro se* litigants and the liberality with which the Court must view their pleadings, *McPherson*, 174 F.3d at 280, the fact that Plaintiff invoked the Eighth as opposed to the Fourteenth Amendment is no basis to dismiss the claim, *see, e.g.*, *Saidock v. Carrington-McClain*, No. 19-CV-1319, 2019 WL 4450678, at *3 (D. Conn. Sept. 16, 2019) (analyzing *pro se* pretrial

9

detainee's claim under the Fourteenth Amendment although the plaintiff sought relief under the Eighth Amendment); *Hester-Bey v. Ford*, No. 13-CV-4656, 2015 WL 4910570, at *3 (E.D.N.Y. June 8, 2015) (evaluating *pro se* plaintiff's claim as one under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), despite the fact that the plaintiff invoked 42 U.S.C. § 1983 and the Eighth Amendment), *adopted by* 2015 WL 4910576 (E.D.N.Y. Aug. 13, 2015). Moreover, the Supreme Court case Lynch cites in support of his argument—*Graham v. Connor*, 490 U.S. 386 (1989)—explains simply that when one complains about force *used during an arrest* or other "seizure," the claim is governed by the Fourth Amendment. That principle is inapplicable here. (*See* Lynch Br. at 7).

Consequently, Lynch's argument that Plaintiff's excessive force claim against him should be dismissed because Plaintiff failed to invoke the Fourteenth Amendment is denied.

III. Failure to Plead Gurrieri's Personal Involvement in a Constitutional Violation

The Matis Defendants argue that Gurrieri must be dismissed because Plaintiff failed to plead facts establishing Gurrieri's personal involvement in the alleged use of excessive force. (Matis Br. at 11). As a fundamental prerequisite, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor; rather, even "supervisory liability requires that the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Williams*

*v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *6 (S.D.N.Y. Feb. 5, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *see also Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021).

In order to establish Gurrieri's participation in the use of excessive force, Plaintiff must either plead facts establishing direct participation or that Gurrieri "failed to intervene to protect the plaintiff from a violation of his constitutional rights by another person." *McGrier v. City of New York*, No. 16-CV-5667, 2019 WL 1115053, at *10 (S.D.N.Y. Mar. 11, 2019), *aff'd*, No. 19-2665, 2021 WL 716993 (2d Cir. Feb. 24, 2021); *see also Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *3 (E.D.N.Y. Feb. 17, 2010), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010). Bearing this in mind, "if Plaintiff were to state . . . the names of each person who was present during the assault[], and that these [D]efendants *either* directly participated in the excessive force *or* failed to intervene, such allegations would be sufficient to allege personal involvement." *Green v. Garcia*, No. 18-CV-1745, 2020 WL 1467359, at *5 (S.D.N.Y. Mar. 25, 2020) (alterations and emphasis in original, internal quotation marks omitted). Gurrieri's presence in the Complaint is limited to the fact that he—along with Lynch, Matis, and Torres—opened Plaintiff's cell, rushed toward him with their fists up, and "punch[ed] at [him]." (Compl. at 5). This allegation places Gurrieri in the cell, alongside the individuals purportedly beating Plaintiff to tears; reading the Complaint liberally and granting Plaintiff every inference, the Court concludes that Plaintiff has alleged Gurrieri's personal involvement insofar as Gurrieri failed to intervene in the use of excessive force. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (outlining elements of failure to intervene claim).

The Matis Defendants' motion on this basis is, accordingly, denied.

IV.  The Qualified Immunity Doctrine

Both Lynch and the Matis Defendants argue that the case should be dismissed against them on the basis of qualified immunity. The Matis Defendants posit that they are entitled to qualified immunity because Plaintiff pled that he was "misbehaving and clearly a danger to himself and to the facility" and he "admits to kicking the gate and refusing to stop." (Matis Br. at 13). The Matis Defendants maintain that these facts justify any use of force—whether excessive or not—because they had to subdue Plaintiff, protect him from himself, and prevent damage to the cell. (*Id*. at 13-14). Lynch insists also that he is entitled to qualified immunity because any force he used reacted to Plaintiff's "damaging jail property, disturbing the order of the facility, and/or threatening physical harm to others." (Lynch Br. at 7). Lynch argues that, on these facts, no reasonable officer would have known that the use of excessive force violated a clear constitutional right. (*Id*.).

"[Q]ualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (alteration in original)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Whether a right is "[c]learly established . . . cannot be defined at a high level of generality, but must be particularized to the facts of the case, so as to give a reasonable officer fair notice that" their conduct is unlawful. *Gerard v. City of New York*, 843 F. App'x 380, 382 (2d Cir. 2021) (internal citations and quotation marks omitted). This is especially

12

so "in the excessive force context because '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Id*. (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (alterations in original)). This standard "do[es] not require a case directly on point for a right to be clearly established; nevertheless, existing precedent must have placed the statutory or constitutional question beyond debate." *Sloley v. VanBramer*, 945 F.3d 30, 40 (2d Cir. 2019) (internal quotation marks omitted)). As "qualified immunity is not only a defense to liability, but also provides immunity from suit . . . the defendant's entitlement to qualified immunity should be resolved at the earliest possible stage in litigation." *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (internal quotation marks omitted).

There is no doubt that well before January 9, 2020, the date of the subject incident, "the law was clearly established that [Plaintiff] had a constitutional right to be free from excessive force." *Szabo v. Parascandolo*, No. 16-CV-3683, 2019 WL 481925, at *7 (E.D.N.Y. Feb. 7, 2019) (quoting *Henry v. Dinelle*, 929 F. Supp. 2d 107, 128 (N.D.N.Y. 2013) (alteration in original)), *appeal dismissed sub nom. Szabo v. Cascone*, 799 F. App'x 77 (2d Cir. 2020). So the question, then, is whether Plaintiff pled facts establishing that Lynch and the Matis Defendants violated that constitutional right in this scenario. The Court concludes that he has done so.

When a pretrial detainee presses a claim for excessive force, he need "show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. The analysis "turns on the facts and circumstances of each particular case," and "[a] court must make this determination from the perspective of a reasonable officer on the scene . . . ." *Id*. at 397 (internal quotation marks omitted). "A court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that" jail officials believe are needed to

13

maintain order, discipline, and security. *Id*. (alteration in original, internal quotation marks omitted). Factors speaking to reasonableness include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. (internal quotation marks omitted); *see also Quinones v. Rollison*, No. 18-CV-1170, 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020).

Here, Plaintiff had a tantrum and kicked his cell gate. (Compl. at 5). In response, Plaintiff was punched, picked up and slammed into the floor, and beaten after having his hands restrained. (*Id*. at 5-6). Accepting Plaintiff's version of events and granting him every inference, the force used by Lynch, Matis, and Torres—in Gurrieri's presence—would be unreasonable. *See Ben-Reuben v. Westchester Cty.*, No. 17-CV-9156, 2019 WL 1406868, at *3 (S.D.N.Y. Mar. 28, 2019) (noting that "the use of entirely gratuitous force is unreasonable and therefore excessive" (internal quotation marks omitted)); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010).

In light of the above, the motions to dismiss on the basis of qualified immunity are denied; the parties may, however, renew this argument at summary judgment.

V. <u>State Law Claims</u>

The final argument, advanced by Lynch, is that the Court should dismiss Plaintiff's state law claims for failure to comply with the notice of claim requirements set by New York General Municipal Law.[7] (Lynch Br. at 7-8).

---

[7] Lynch also argued that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because "dismissal of Plaintiff's federal claims deprives this Court of supplementary jurisdiction over Plaintiff's remaining state and local law claims." (Lynch Br. at 7 (internal quotation marks omitted)). Given the fact that the Court has not dismissed Plaintiff's claims under federal law, the Court need not and does not address this branch of Lynch's argument.

14

Without regard to the notice of claim requirements, Plaintiff's only reference to relief under New York State law is a single reference to New York Correction Law § 137(5). (Compl. at 4). That provision provides, *inter alia*, that "[n]o inmate in the care or custody of the department shall be subjected to degrading treatment, and no officer or other employee of the department shall inflict any blows whatever upon any inmate, unless in self defense, or to suppress a revolt or insurrection." N.Y. Corr. Law § 137(5). Assuming that this provision even applies to Sullivan County, *see* N.Y. Corr. Law § 2(1) ("'Department' means the state department of corrections and community supervision"), there is no right of action under this statute, *Jones v. State*, 98 N.Y.S.3d 366, 369 (App. Div. 2019), *appeal dismissed*, 127 N.E.3d 308 (N.Y. 2019).

Accordingly, Plaintiff's lone claim against Lynch under state law—violation of N.Y. Corr. Law § 137(5)—is dismissed because that law does not create a private right of action.

## **CONCLUSION**

For the foregoing reasons, that Matis Defendants' motion is DENIED and Lynch's motion is GRANTED IN PART. Both Lynch and the Matis Defendants are directed to file their Answers within fourteen (14) days of the date of this Memorandum Opinion and Order. The Court will issue an Initial Pretrial Conference Order and set a conference date in short order.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 34 and Doc. 39, and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated: White Plains, New York
May 20, 2021

PHILIP M. HALPERN
United States District Judge